# EXHIBIT A

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential: Attorney Client Privilege*

Stephen N. Xenakis, M.D., LLC
2000 15th Street North
Suite 200
Arlington, VA 22201
email: snxenakis@hotmail.com
snxenakis7@gmail.com
Phone: (703) 615-3289

April 23, 2019

**VIA ELECTRONIC MAIL ONLY**

Thomas A. Durkin, Esq.
Durkin & Roberts
2446 North Clark Street
Chicago, IL 60614

Joshua G. Herman
Attorney at Law
53 West Jackson Blvd., Suite 457
Chicago, IL 60604

**Re:** *United States v. Daoud;* <u>No. 12-CR-723</u>

Dear Messrs. Durkin and Herman:

This letter supplements my clinical findings, impressions, and recommendations regarding Mr. Daoud's current mental state.

The court has qualified me as an expert on Mr. Daoud's competency, and I have continued my engagement accordingly. My opinions are the product of extensive conversations with you and Mr. Daoud's father, all of whom as I understand it, have had the most opportunity since his return from Butner to observe and interact with Mr. Daoud. I have also read writings that Mr. Daoud prepared to submit to the Court on his behalf at the sentencing hearing.

The consensus of the attorneys and his father, as well as my reading of his recent writings, is that Mr. Daoud demonstrates remarkable improvement in his mental state and a dramatic turn-around in his attitudes and behavior. He has willingly complied with treatment and has indicated that he would continue as recommended by his doctors and therapists. His current treatment includes monthly injections of depot aripiprazole. There are no reports of interpersonal conflict with other prisoners or guards. Mr. Daoud spends his days studying, reading, and participating in recreational activities.

The notable observations and changes in his mental state include:

1

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential: Attorney Client Privilege*

1. His conversation is more logical and tractable, without tangents or references to bizarre and idiosyncratic ideas demonstrated before his restoration to competency.
2. He appears considerably less agitated and anxious in interactions with staff, family, and attorneys.
3. He has stated repeatedly that he looks back on his thinking and decisions at the time of the offenses as naïve and poorly conceived.
4. He feels that his immaturity and mental condition caused him to submit to inducements that violated his values and sentiments at the time; but that he could not oppose or challenge the propaganda about religious commitment, as explained to him.
5. He feels that at 18 years old and his stage in life, he was unwise in complying with the directives that he was hearing including the advice of the undercover government agent.
6. He considers himself to have been illogical and paranoid in his thinking, but had been cut off from seeking advice and counsel that would have assisted him.
7. He has rejected the ideology and rationalizations that induced him to act at 18 years old and is taking initiative towards a more productive life.
8. He has expressed great interest in attending college in the United States and realizes that this is the only way he will be able to gain the critical thinking skills necessary for him to become a productive member of society. His goals are to become a teacher, marry, and having a family.
9. He has rejected ideology that leads to violence and other political activity; but also realizes that he must continue his mental health treatment, obtain therapy, and comply with stringent conditions of Supervised Release to ensure that he does not have any relapse. He appears quite willing to submit to these requirements.

**Formulation**

Mr. Daoud demonstrates significant improvement in his mental state. He manifests marked changes in his thinking, mood, attitudes, and interpersonal behavior. He has developed more logical cognitive processing and a mature understanding for the reasons of his prior conduct. He has rejected violence and related political activity that induced him as an 18-year-old adolescent.

The changes and improvements in his mental state and condition are the products of maturing (he is now 25-years-old), the appropriate dosing of psychotropic medications, consistent attention of his attorneys and family, and timely mental health evaluations and other treatments. He expresses an interest in continuing in treatment and therapy and demonstrates a willingness to follow through. His family and attorneys have repeatedly observed that the prison environment adversely affects his mental state and undermines continuing improvement, especially placement in the SHU. Their observations and judgments are consistent with multiple publications and research on the harmful impact of jails and prisons (Patterson, R.F. Our Part in the Evolution of Correctional Mental Health Care. Journal of the American Academy of Psychiatry and the Law Online June 2018, 46 (2) 140-146; DOI: https://doi.org/10.29158/JAAPL.003740-18;
Bazelon, E. If Prisons Don't Work, What Will? The New York Times, April 5, 2019). There is no evidence that the prison setting provides him with mental health care consistent with the standards of care for his illnesses and conditions, except for psychotropic medications. I note that prescribing the appropriate dose of psychotropic medication required extensive court involvement and opposition by jail medical staff. There is no basis for assuming that continued incarceration

2

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential: Attorney Client Privilege*

can sustain the improvements in mental state and his conditions. This lack of sufficient mental health treatment for someone such as Mr. Daoud is also consistent with my own personal experience and professional dialogue with other mental health professionals familiar with the Bureau of Prisons.

**Summary**

I affirm my previous clinical assessment of a serious mental illness manifested by psychotic thinking and bizarre ideation. The signs and symptoms that Mr. Daoud demonstrated are consistent with both the diagnosis provided by Dr. Wadsworth and my prior judgment:

**298.8 (F28) Other Specified Schizophrenia Spectrum and Psychotic Disorder, improved,** manifested by worsening intrusive thinking with hallucinatory quality, disorganized behavior, impairment in social, occupational, and other important functioning, and anxiety.

**297.1 (F22) Delusional Disorder, improved,** manifested by the presence of delusions longer than one month, functioning is not markedly impaired apart from impact of the delusions, behavior is not obviously bizarre or odd, and the disturbance is not attributable to the physiologic effects of a substance or another medical condition.

Mr. Daoud had developed a serious mood disorder with suicidal ideation that required continuing monitoring, treatment, and therapy:

**296.22 (F32.1) Major Depressive Disorder, moderate, improved,** manifested by depressed mood most of the day, hypersomnia, loss of energy and fatigue, psychomotor agitation, markedly diminished interests, and diminished ability to think.

The reports of attorneys and staff support my judgment that Mr. Daoud shows substantial recovery from his illnesses and conditions. He has expressed an intent to continue with treatment and to engage in therapy as recommended.

**Recommendations**

The standard of care recommended for Mr. Daoud's conditions and illnesses is a program of comprehensive treatment and therapy in the least restrictive setting. Such a comprehensive program includes multifaceted education, training, and therapy that provides necessary opportunities to broaden his perspectives and gain vital skills. The typical programs are conducted for many months and involve group activities and other pro-social events that help expand the awareness of adolescents and young adults.

Effective, evidence-based programs provide individual therapy, group therapy, psychotropic medication as needed, and recreational therapy. As importantly, with respect to improving critical thinking skills, I strongly recommend that Mr. Daoud be afforded the opportunity to attend college, obtaining the benefit of a broad liberal arts education and exposure to the rigors and diversity of thought provided in a university setting.

*BG (Ret) Stephen N. Xenakis, M.D.*
*Confidential: Attorney Client Privilege*

The prison setting fails to offer the required interventions and treatment; and is professionally inappropriate for Mr. Daoud's condition at this time. Mr. Daoud demonstrates a strong trajectory to improvement and becoming a productive citizen. The prison setting can only adversely impact his mental state and continued progress. It is contraindicated for his mental illnesses and conditions.

Setting up and configuring the optimal program for treatment and therapy of Mr. Daoud's conditions and illnesses requires extensive research on available services in his community. The initial steps include comprehensive assessment of Mr. Daoud's mental state. An element of the assessment includes interviewing the family, identification of potential living accommodations, and identifying available therapeutic and supportive services in his community. Mr. Daoud would most likely benefit from a thoughtful and well-planned transition program. He requires close monitoring for many years after release, as will likely be required by the Court and nature of his offenses.

I am pleased to assist with his case and am providing these statements to the best of my knowledge and experience without coercion or influence. If you have any questions, please do not hesitate to contact me.

Respectfully,

*[signature]*

Stephen N. Xenakis, M.D.
Brigadier General (Ret), U.S. Army

4