Verification

I, Adel Daoud, will affirm under the penalty of perjury that the information stated herein in the attached Memorandum is true and that I have writte/typed and read this Affidavit and submit the same with purpose . That this is being submitted for the reasons requested within the body of these documents. Afiiant decleares under the penalty of perjury pursuant to 28 USC Sec 1746 on the 21st day of November, 2023

Respectfully submitted,

Adel Daoud

Notary          , Date

My Commission Ends

SAMEKA L GIBBS
Official Seal
Notary Public - State of Illinois
My Commission Expires Apr 7, 2026

139

## Certificate of Service

I hereby certify that I have caused a copy of this Memorandum/Supplement/Motion to Squash Arrest or Dismiss Indictment/Motion to Impeach the UCE and CHS in the Fake Bombing and Murder for Hire cases, to be served to all parties of interest through the cleark by placing same in ~~inamte~~ inmate legal mail on this the day of 27th of Nov. 2023. This being submitted under the penalty of perjury

Respectfully submitted,

*[signature]*

## Forgotten or Additional References

[110] Vino: It has been 2 years, man. I've been doing shit and giving them guns and all that shit for 2 years man. Aint nothing happening yet, man. I'm not gonna keep fucking around and getting myself hurt, See page 63

Have you met someone who only talks to you when yhe want something ?

Vino: Hello

Wife: What... Vino

Vino: Good morning baby

Wife: What you want

Vino: I said good morning baby

Wife: what you want Vino?!

Vino: Stop playing with me bitch! I aint beefing with you today. I just said good morning baby, that mean that the beef over I'm I aint tripping now. Now. Good morning baby

Wife: What you want?

Vino: Stop playing with me man! What's up?

[00:19-00:47, 1E751FBE..., kankakee jail call]

Third Case

See 302_014-00009.pdf, at 302_014-000049, BOP Health Services,

"small laceration epidermal left thumb"

"left thumb, small superficial laceration"

"I have no pain cut on thumb" Blood was from my thumb

The attack was described at "moderate", see BUTNER_002-000440.pdf, at BUTNTER_002-000441

141

Lawyers and Doctor.

See on Docket#226 The Court approves expenses for attorneys Thomas Durkin and Joshua Herman to travel to Springfield facility to meet with their client. Parties are ordered to submit a motion and proposed order for Dr. Xenakis to continue to receive payment for professional services [1/31/2017]

Dr. Xenakis was already being paid when he told my dad to pay to see me in Butner.

As for whether my lawyers saw me when they took money to see me in Springfield Missouri, please ask the jail at

US Medical Center for Federal Prisoners

1900 W Sunshine Street

Springfield, Missouri, 65807

Potential Question: We understand why Vino should be impeached as a witness, but why UCE?

Answer: Because the UCE initially stated that the bombing plan was in fact mine. He swore that I came up with the date and the method of the attack. He denied having any say so in the plot, including the target. He admitted his job was not to tell me what to do or not do, but to simply investigate to see what I'm doing. That may have been his job, but that's not what he did. Up to when he claimed that I was in fact plotting a car bombing the entire time, and that he only "caught" me. When crossed examined, I would ask a question, he would lie, I would have him read from the transcript which contradicted his statement, and ask him to confirm: Did you say that? Did I say that? And he would confirm those statements. The entire cross examination he was lying on key facts of the case and admitting it. And all praise is due

14a

to Allah.

*The following quotes are from this case*

## 112 SCT 1535, 118 LED2D 174, 503 US 540 JACOBSON v UNITED STATES

**KEITH JACOBSON, Petitioner**
*vs.*
**UNITED STATES**

**503 US 540, 118 L Ed 2d 174, 112 SCT 1535**

[No. 90-1124]

**Argued November 6, 1991.**

**Decided April 6, 1992.**


(144)

LED2  1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43222424

Merely afford opportunities vs. Originating a criminal design

### Criminal Law § 21 - <u>entrapment</u> - government artifice and stratagem

2a, 2b. The fact that officers or employees of the government merely afford opportunities or facilities for the commission of an offense does not defeat the prosecution for the offense, because artifice and stratagem may be employed to catch those <*pg. 178> engaged in criminal enterprises; however, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce the commission of the crime so that the government may prosecute.

Annotation: p.703, infra.

This is why they would be careful to say they would give me an "opportunity" rather than admit solicitation & Entrapment. They knew the law.

There's a huge difference between, for example,

(A) (Legal) I tell agent I have plan to use pipe bomb for terrorist attack
Agent gives me a bogus pipe or ingredient & they arrest me upon attempt

(B) (Illegal) Befriending me so you can solicit me to a carbombing that you made so that you can talk me into it & prosecute me & give me a heavy sentence

(145)

LED2                                    1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43222424

*Disposed to commit the criminal act prior to being first approached by Government agents*

### Criminal Law § 21; Evidence § 982 - <u>entrapment</u> - drug trafficking - proof beyond reasonable doubt

3a, 3b. In cases in which the government has induced a defendant to break the law and the defense of **entrapment** is at issue, the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act <u>prior</u> to first being approached by government agents; thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs and, if the offer is accepted, make an arrest on the spot or later, because in such a typical case, or in a more elaborate "sting" operation involving government-sponsored fencing where the defendant was simply provided with the opportunity to commit a crime, the **entrapment** defense is of little use, since the ready commission of the criminal act simply demonstrates the defendant's predisposition.

Annotation: p.703, infra.

(146)

LED2  1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43222424

*The government may not play on the weaknesses of an innocent party to prosecute*

### Criminal Law § 21 - <u>entrapment</u>

6. The government may not <u>play on the weaknesses of an innocent party</u> and beguile the party into committing crimes which the party otherwise would not have attempted; law enforcement officials go too far <u>when they implant in the mind of an innocent person the disposition to commit an alleged offense and induce its commission in order that they may prosecute</u>; when the government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to the citizen's own devices, likely would never have run afoul of the law, the courts should intervene.

Annotation: p.703, infra.

They manipulated me using

1. My age: You cannot convince me we will <u>not</u> go to jail if we blow up people, & I've never been set up before

2. My Religious beliefs & sympathies: I'm loyal to my Religion & I adhere to & accept the law of Islam. I support Muslims waging Jihad. I feel horrible about the Muslims being killed by Americans, Jews, Russians, Chinese, & Shias. The attack was aimed to get Americans out of Afghanistan & other Muslim lands

LED2      1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(147)

43222424

*The tactic of mirroring a person, in order to successfully befriend & solicit him to agree to a crime he wasn't already about to do was declared illegal*

Nevertheless, the Government's "prohibited mailing specialist" began writing to petitioner, using the pseudonym "Carl Long." The letters employed a tactic known as "mirroring," which the inspector described as "reflect[ing] whatever the interests are of the person we are writing to." Tr 342. Petitioner responded at first, indicating that his interest was primarily in "male-male items." Record, Government Exhibit 9A. Inspector "Long" wrote back:

"My interests too are primarily male-male items. Are you satisfied with the type of VCR tapes available? Personally, I like the amateur stuff better if its [sic] well produced as it can get more kinky and also seems more real. I think the actors enjoy it more." Id., Government Exhibit 13.

Petitioner responded:

"As far as my likes are concerned, I like good looking young guys (in their late teens and early 20's) doing their thing together." Id., Government Exhibit 14.

Petitioner's letters to "Long" made no reference to child pornography. After writing two letters, petitioner discontinued the correspondence.

[503 US 546]

*Jacobson was clearly predisposed if predisposition meant anything other a plan aka a criminal design*


(148)

LED2                                                              1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43222424

*[Handwritten at top: "Legal vs Illegal Tactics - Compare"]*

*[Handwritten: "Jacobson is not more innocent than Daoud for the respective accusations"]*

**[3b][4]** Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs and, if the offer is accepted, make an arrest on the spot or later. In

[503 US 550]

such a typical case, or in a more elaborate "sting" operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the **entrapment** defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition. See United States v Sherman, 200 F.2d 880, 882 (CA2 1952). Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner-who must be presumed to know the law-had promptly availed himself of this criminal opportunity, it is unlikely that his **entrapment** defense would have warranted a jury instruction. Mathews v United States, 485 US 58, 66, 99 L Ed 2d 54, 108 S Ct 883 (1988).

*[Handwritten margin right: "Legal", "Legal"]*

**[1d]** But that is not what happened here. By the time petitioner finally placed his order, he had already been the target of 26 months of repeated mailings and communications from Government agents and fictitious organizations. Therefore, although he had become predisposed to break the law by May 1987, it is our view that the Government did not prove that this predisposition was independent and not the product of the attention that the Government had directed at petitioner since January 1985. Sorrells, supra, at 442, 77 L Ed 413, 53 S Ct 210, 86 ALR 249; Sherman, 356 US, at 372, 2 L Ed 2d 848, 78 S Ct 819.

*[Handwritten margin left: "Illegal"]*

The prosecution's evidence of predisposition falls into two categories: evidence developed prior to the Postal Service's mail campaign, and that developed during the course of the investigation. The sole piece of preinvestigation evidence is petitioner's 1984 order and receipt of the Bare Boys magazines. But this is scant if any proof of petitioner's predisposition to commit an illegal act, the criminal character of which a defendant is presumed to know. It may indicate a predisposition to view sexually oriented photographs that are responsive to his sexual tastes; but evidence that merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition.

*[Handwritten margin left: "Bare Boys Magazine was legal & the time but not when law was passed"]*

*[Handwritten margin right: ""Inspire" was & is still legal - also "merely indicates a generic inclination to act within broad range""]*

[503 US 551]

**[1e][5]** Furthermore, petitioner was acting within the law at the time he received these magazines. Receipt through the mails of sexually explicit depictions of children for noncommercial use did not become illegal under federal law until May 1984, and Nebraska had no law that forbade petitioner's possession of such material until 1988. Neb Rev Stat § 28-813.01

LED2                                         1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*[Circled page number: 149]*

43222424

*[Handwritten left margin: I didn't agree to go with UCE until he kept promising me I wouldn't go to jail]*

(1989). Evidence of predisposition to do what once was lawful is not, by itself, sufficient to show predisposition to do what is now illegal, for there is a common understanding that most people obey the law even when they disapprove of it. This obedience may reflect a generalized respect for legality or the fear of prosecution, but for whatever reason, the law's prohibitions are matters of consequence. Hence, the fact that petitioner legally ordered and received the Bare Boys magazines does little to further the <*pg. 186> Government's burden of proving that petitioner was predisposed to commit a criminal act. This is particularly true given petitioner's unchallenged testimony that he did not know until they arrived that the magazines would depict minors.

[1f] The prosecution's evidence gathered during the investigation also fails to carry the Government's burden. Petitioner's responses to the many communications prior to the ultimate criminal act were at most indicative of certain personal inclinations, including a predisposition to view photographs of preteen sex and a willingness to promote a given agenda by supporting lobbying organizations. Even so, petitioner's responses hardly support an inference that he would commit the crime of receiving child pornography through the mails.³ Furthermore, a person's inclinations and "fantasies ... are

[503 US 552]

his own and beyond the reach of government ...." Paris Adult Theatre I v Slaton, 413 US 49, 67, 37 L Ed 2d 446, 93 S Ct 2628 (1973); Stanley v Georgia, 394 US 557, 565-566, 22 L Ed 2d 542, 89 S Ct 1243 (1969).

*[Handwritten right margin: If you can fantasize having sex with minor boys, I can fantasize killing people]*

On the other hand, the strong arguable inference is that, by waving the banner of individual rights and disparaging the legitimacy and constitutionality of efforts to restrict the availability of sexually explicit materials, the Government not only excited petitioner's interest in sexually explicit materials banned by law but also exerted substantial pressure on petitioner to obtain and read such material as part of a fight against censorship and the infringement of individual rights. For instance, HINT described itself as "an organization founded to protect and promote sexual freedom and freedom of choice" and stated that "the most appropriate means to accomplish [its] objectives is to promote honest dialogue among concerned individuals and to continue its lobbying efforts with State Legislators." Record, Defendant's Exhibit 113. These lobbying efforts were to be financed through catalog sales. Ibid. Mailings from the equally fictitious American Hedonist Society, id., Government Exhibit 7, and the correspondence from the nonexistent Carl Long, id., Defendant's Exhibit 5, endorsed these themes.

Similarly, the two solicitations in the spring of 1987 raised the spectre of censorship while suggesting that petitioner ought to be allowed to do what he had been solicited to do. The mailing from the Customs Service referred to "the worldwide ban and intense enforcement on this type of material," observed that "what was legal and commonplace is now an 'underground' and

LED2 (130) 2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*[Handwritten bottom: They waved the Banner of Islam & defending Muslims which not only excited me but pressured me]*

secretive service," and emphasized that "[t]his environment forces us to take extreme measures" to ensure delivery. Id., Government Exhibit 22. The Postal Service solicitation described the concern about child pornography as "hysterical nonsense," decried "international censorship," and assured petitioner, based on consultation with "American solicitors," that an order that had been posted could not be opened <*pg. 187> for inspection without authorization

[503 US 553]

of a judge. Id., Government Exhibit 1. It further asked petitioner to affirm that he was not a Government agent attempting to entrap the mail order company or its customers. Ibid. In these particulars, both Government solicitations suggested that receiving this material was something that petitioner ought to be allowed to do.

[1h][6] Petitioner's ready response to these solicitations cannot be enough to establish beyond reasonable doubt that he was predisposed, prior to the Government acts intended to create predisposition, to commit the crime of receiving child pornography through the mails. See Sherman, 356 US, at 374, 2 L Ed 2d 848, 78 S Ct 819. The evidence that petitioner was ready and willing to commit the offense came only after the Government had devoted 2 1/2 years to convincing him that he had or should have the right to engage in the very behavior proscribed by law. Rational jurors could not say beyond a reasonable doubt that petitioner possessed the requisite predisposition prior to the Government's investigation and that it existed independent of the Government's many and varied approaches to petitioner. As was explained in Sherman, where **entrapment** was found as a matter of law, "the Government [may not] pla[y] on the weaknesses of an innocent party and beguil[e] him into committing crimes which he otherwise would not have attempted." Id., at 376, 2 L Ed 2d 848, 78 S Ct 819.

Law enforcement officials go too far when they "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells, 287 US, at 442, 77 L Ed 413, 53 S Ct 210, 86 ALR 249 (emphasis added). Like the Sorrells Court, we are "unable to conclude that it was the intention of the Congress in enacting this statute that its processes of detection and enforcement should be abused by the instigation by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them." Id., at 448, 77 L Ed 413, 53 S Ct 210, 86 ALR 249. When the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if

(151)

[503 US 554]

left to his own devices, likely would have never run afoul of the law, the courts should intervene.

LED2  3

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

Handwritten annotations:

Left margin: "The SCES = UCE mirrored me & supported the very behavior they set me up for. It took 3 months May to August for me to agree & didn't readily agree because"

Bottom: "They asked me: What would you do? Remember?"

Right margin:
"they
1. Befriend me
2. Introduce me to UCE "cousin"
3. He says he wanted to do an attack
4. I said I have nothing but ideas
5. Told me to write down ideas
6. Told me to "help him"
7. UCE Came up w/ Bomb, then car bomb told me to pick target, then different"

target, told me to take poctures, told me to push button after we pushed it, & told me to do the wires & frames me

[1i] Because we conclude that this is such a case and that the prosecution failed, as a matter of law, to adduce evidence to support the jury verdict that petitioner was predisposed, independent of the Government's acts and beyond a reasonable doubt, to violate the law by receiving child pornography through the mails, we reverse the Court of Appeals' judgment affirming the conviction of Keith Jacobson.



(152)

LED2      4

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43222424

*I Didn't want to go to Jail either!*

### Evidence § 980 - <u>entrapment</u> - predisposition

5. With respect to the defense of **entrapment**, evidence of a predisposition to do what was once lawful is not, by itself, sufficient to show a predisposition to do what is now illegal, because there is a common understanding that most people obey the law even when they disapprove of it.

Annotation: p.703, infra.



LED2        1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43222424

Adel Daoud - 43222-424
Metropolitan Correctional Center
71 W Van Buren
Chicago, IL 60605

Clerk of Court
219 S Dearborn
Chicago, IL 60604

Legal Mail

METROPOLITAN CORRECTIONAL CENTER
71 W. VAN BUREN ST., CHICAGO, IL 60605

This letter has neither been opened nor inspected.
The enclosed letter was processed through special mailing procedures for forwarding to you.

NOV 2 8 2023

If the writer raises a question or problem over which this facility has jurisdiction,
you may wish to return the material for further information or clarification.
If the writer encloses correspondence for forwarding to another addressee,
please return the enclosure to the above address.

12/05/2023-28